**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1514
_____

UNITED STATES OF AMERICA

v.

ERIC SCOTT,
                                    Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cr-00565-001)
District Judge: Hon. Mitchell S. Goldberg
_____

Argued January 13, 2021

Before: AMBRO, KRAUSE, and PHIPPS, *Circuit Judges.*

(Filed: September 22, 2021)
_____

Christy Martin
Brett G. Sweitzer [ARGUED]
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center – Suite 540 West
Philadelphia, PA 19106
        *Counsel for Appellant*

Jason Bologna
Robert A. Zauzmer [ARGUED]
Office of United States Attorney

615 Chestnut Street – Suite 1250
Philadelphia, PA 19106
     *Counsel for Appellee*

—————————

OPINION OF THE COURT

—————————

KRAUSE, *Circuit Judge*.

This appeal requires us to decide whether Hobbs Act robbery is a "crime of violence" under the career offender provision of the United States Sentencing Guidelines. U.S.S.G. § 4B1.2(a). To answer that question, we must apply the oft-bedeviling categorical approach and compare the statutory offense with the definition of "crime of violence" found in the Guidelines. We now hold, along with every Court of Appeals to address the issue, that Hobbs Act robbery sweeps more broadly than the career offender guideline and therefore does not qualify as a crime of violence. Given both the text of the Guidelines and the consensus of the Courts of Appeals, we also conclude that—at least as of the disposition of this appeal—the error qualifies as plain. We will vacate Appellant Eric Scott's sentence and remand for resentencing.

## I.    **Factual and Procedural Background**

In February 2020, Scott was sentenced for possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). In anticipation of sentencing, the United States Probation Office prepared a Presentence Report (PSR) that included a career offender enhancement under U.S.S.G. § 2K2.1(a)(2), which applies if a defendant "committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." Here, two prior convictions formed the basis for that enhancement: a 2019 conviction for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1), and a 2019 conviction for Hobbs Act robbery in violation of 18 U.S.C. § 1951(b)(1) and for using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). The PSR assigned an enhanced base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2). The proposed

total offense level carried with it an advisory guideline range of 84–105 months in prison.

Of relevance to this appeal, neither Scott nor the Government challenged the enhancement or any of the calculations in the PSR before the sentencing court. Instead, Scott sought a sentence of 84 months—the bottom of the Guidelines range—to run concurrently with a previously imposed 70-month sentence, and the Government disagreed only in that it sought a term consecutive to the other federal sentence. The District Court adopted the PSR's conclusions and sentenced Scott to 90 months' imprisonment consecutive to the existing sentence, three years of supervised release, and a $100 special assessment.

On appeal, Scott argues that it was reversible error to sentence him as a career offender because Hobbs Act robbery is not a "crime of violence" as defined in the federal Sentencing Guidelines. We now turn to that question.

## II.    Discussion

The District Court exercised jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), as this case presents an appeal of a sentence imposed under the Sentencing Reform Act of 1984. Whether an offense qualifies as a crime of violence under the Sentencing Guidelines is a legal question that this Court typically reviews de novo. *United States v. Henderson*, 841 F.3d 623, 626 (3d Cir. 2016). Because Scott raises this issue for the first time on appeal, however, we review it for plain error. *United States v. Couch*, 291 F.3d 251, 252–53 (3d Cir. 2002). We must decide, in other words, whether (1) the conclusion that Hobbs Act robbery constitutes a crime of violence was error and, if so, whether the error (2) is "plain," (3) "affect[s] substantial rights," and (4) "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732–36 (1993) (alterations in original) (citations omitted); Fed. R. Crim. P. 52(b). Scott has the burden of demonstrating each. *Olano*, 507 U.S. at 734–35.

3

We address whether it was error to deem Hobbs Act robbery a crime of violence under U.S.S.G. § 2K2.1(a)(2), and because we conclude that it was, we then consider whether the remaining *Olano* factors are met. *Id.* at 734.

## A. Hobbs Act Robbery is Not a Crime of Violence Under the Guidelines

We begin by applying the now-familiar categorical approach to determine whether Scott's Hobbs Act robbery conviction qualifies as a predicate "crime of violence" for the purposes of a career offender enhancement. Notwithstanding the bizarre results it sometimes produces, this analytical framework compels us to look "not to the facts of the particular prior case," but to the statutory definition of the crime of conviction. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (internal quotation marks omitted). We compare the scope of the conduct covered by the elements of Hobbs Act robbery with the definitions of "crime of violence" found in the Sentencing Guidelines to determine "if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013). But if "the least culpable conduct hypothetically necessary to sustain a conviction under the [Hobbs Act]," *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016) (citation omitted), would not be a crime of violence under the Guidelines, then any "conviction under that law cannot count as a[] ['crime of violence'] predicate," *Descamps*, 570 U.S. at 261. Under the categorical approach, "a prior crime [will] qualify as a predicate offense in all cases or in none." *Id.* at 268.

Under the Sentencing Guidelines, a statutory offense can qualify as a "crime of violence" under Section 4B1.2(a)(1), which encompasses statutes having "as an element the use, attempted use, or threatened use of physical force against the person of another" (the "Elements Clause"), or Section 4B1.2(a)(2), which lists particular offenses deemed "crimes of violence" for Guidelines purposes (the "Enumerated Offenses Clause"). Hobbs Act robbery satisfies neither.

A plain reading of the text demonstrates that the definition of "crime of violence" in the Guidelines covers the use of force or threats of force only against persons, *see*

4

U.S.S.G. § 4B1.2(a), so there can be no categorical match with Hobbs Act robbery, which by its terms includes crimes against property, *see* 18 U.S.C. § 1951(b)(1). In so holding, we join the chorus of voices concluding that Hobbs Act robbery is not categorically a crime of violence under the Guidelines.[1] *See United States v. Prigan*, — F.4th —, No. 18-30238, 2021 WL 3612176, at *3–5 (9th Cir. Aug. 16, 2021); *United States v. Green*, 996 F.3d 176, 181 (4th Cir. 2021); *Bridges v. United States*, 991 F.3d 793, 801 (7th Cir. 2021); *United States v. Eason*, 953 F.3d 1184, 1189–93 (11th Cir. 2020); *United States v. Camp*, 903 F.3d 594, 600–04 (6th Cir. 2018), *cert. denied*, — U.S. —, 139 S. Ct. 845 (2019); *United States v. O'Connor*, 874 F.3d 1147, 1153–58 (10th Cir. 2017); *see also United States v. Edling*, 895 F.3d 1153, 1157–58 (9th Cir. 2018) (reaching the same conclusion when analyzing a state statute identical to Hobbs Act robbery in all relevant respects).

### 1. *Hobbs Act Robbery Does Not Satisfy the Elements Clause*

We need not tarry long over the Elements Clause. That clause defines crimes of violence as those offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Hobbs Act robbery, on the other hand, means "the unlawful taking from the person of another . . . by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). Because the Elements Clause restricts the object

---

[1] In contrast to the Guidelines, a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) does posit force "against the person or property of another." Thus, Hobbs Act robbery is a categorical match with the elements of § 924(c)(3)(A) as we recently recognized in *United States v. Walker*, 990 F.3d 316, 324–25 (3d Cir. 2021); *see also United States v. O'Connor*, 874 F.3d 1147, 1158 (10th Cir. 2017) ("There is nothing incongruous about holding that Hobbs Act robbery is a crime of violence for purposes of 18 U.S.C. § 924(c)(3)(A), which includes force against a person *or* property, but not for purposes of U.S.S.G. 4B1.2(a)(1), which is limited to force against a person.").

of the use of force to "the person of another," whereas Hobbs Act robbery extends to the use of force against the "person or property" of another, even the Government concedes the elements are not a categorical match.

2. *Hobbs Act Robbery Also Sweeps More Broadly than Robbery Under the Enumerated Offenses Clause*

To ascertain if a felony qualifies as a crime of violence under the Enumerated Offenses Clause, we disregard the label on the offense and "'look to whether the conduct necessarily proven as a prerequisite' for the defendant's conviction under the statute is 'a natural equivalent to the offense as envisioned by the Guidelines' drafters.'" *Eason*, 953 F.3d at 1193 (citation omitted). The Government points to "robbery" as one natural equivalent among the enumerated offenses. Again, however, it is not a categorical match for the simple reason that Hobbs Act robbery reaches force against property, while guidelines robbery does not.

Because the Guidelines do not define "robbery," we revert to its generic meaning, *see United States v. Graves*, 877 F.3d 494, 501–02 (3d Cir. 2017), which is "the taking of property from another person or from the immediate presence of another person by force or by intimidation," *United States v. McCants*, 952 F.3d 416, 428–29 (3d Cir. 2020). Although the taking itself requires "no more than *de minimis* force," we have previously recognized that such use of force necessarily "implies personal violence." *Graves*, 877 F.3d at 502–03; *see also Camp*, 903 F.3d at 601–02; *O'Connor*, 874 F.3d at 1155. Hobbs Act robbery differs in that it also reaches conduct directed at property that "do[es] not necessarily create a danger to the person." *Camp*, 903 F.3d at 602 (emphasis omitted).[2]

---

[2] Although the inclusion of injury to property in Hobbs Act robbery is itself sufficient to preclude a categorical match with guidelines robbery, we note that Hobbs Act robbery is also broader than generic robbery in that it permits conviction based on force, "immediate or future," to a person or property, 18 U.S.C. § 1951(b)(1) (emphasis added), while

### 3. The Government Cannot Avoid the Plain Language of the Guidelines

In an attempt to circumvent the plain language of the Guidelines, the Government offers up a creative but ultimately unsuccessful argument. It contends that we can combine our consideration of different enumerated offenses for purposes of a categorical analysis, and that, if we do, a combination of the conduct covered by guidelines robbery and extortion produces a categorical match with Hobbs Act robbery.

We agree with the Government that we may consider a combination of enumerated offenses. The Guidelines define "crime of violence" as "*any* [of the enumerated] offense[s] under federal or state law," U.S.S.G. § 4B1.2(a) (emphasis added), and our sister circuits agree that "nothing in the Guidelines or related authorities suggests a court is limited to considering only a single corresponding crime of violence when evaluating a state statute under the categorical framework." *United States v. Castillo*, 811 F.3d 342, 347 (10th Cir. 2015), *superseded by regulation on other grounds as recognized in O'Connor*, 874 F.3d at 1152.[3] A combination of guidelines robbery and extortion, however, does not salvage the Government's case. We already know that guidelines robbery does not reach force against property. *See supra* Section II.A.2. But neither does guidelines extortion.

The Guidelines define extortion as "obtaining something of value from another by the wrongful use of (A)

---

guidelines robbery is limited to immediate danger to the victim. *See Camp*, 903 F.3d at 601–02.

[3] *See, e.g.*, *United States v. Becerril-Lopez*, 541 F.3d 881, 891–92 (9th Cir. 2008) (reasoning that if state conviction is a categorical match to a combination of Guidelines-described robbery and extortion, it is a crime of violence), *superseded by regulation on other grounds as recognized in United States v. Bankston*, 901 F.3d 1100, 1104 (9th Cir. 2018); *Eason*, 953 F.3d at 1193 ("Both circuits that have addressed this issue—the Sixth and the Tenth—have held that Hobbs Act robbery does not satisfy either enumerated offense or some combination of both offenses. . . . We agree with them.").

force, (B) fear of physical injury, or (C) threat of physical injury." U.S.S.G. § 4B1.2. The Government points to the fact that guidelines extortion is defined to include "fear . . . or threat of physical injury," and argues—focusing on the word "physical" alone—that extortion is capacious enough to reach injury to property. But "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction." *Dolan v. U.S.P.S.*, 546 U.S. 481, 486 (2006).[4] To the contrary, the Supreme Court has cautioned against "attempt[ing] to break down [a] term into its constituent words," for doing so "is not apt to illuminate its meaning." *Sullivan v. Stroop*, 496 U.S. 478, 483 (1990).

The most natural reading of "physical injury" is as a single term that excludes harm to property. That is because "physical" operates as an adjective, modifying the word "injury," and together they connote "bodily injury," meaning "[p]hysical damage to a person's body." *Physical Injury*, Black's Law Dictionary (11th ed. 2019); *id.* (*Bodily Injury*). Were there any doubt, that is the way "physical injury" is used consistently throughout the Guidelines, *see, e.g.*, U.S.S.G. § 5K2.2,[5] and we read "identical words used in different parts of the same act . . . to have the same meaning,"[6] *Atl. Cleaners*

---

[4] The same "[b]asic tenets of statutory construction," including the use of canons of construction, apply when interpreting the Sentencing Guidelines. *See United States v. Grier*, 585 F.3d 138, 143 (3d Cir. 2009) (citing *United States v. Milan*, 304 F.3d 273, 294 (3d Cir. 2002)).

[5] *See also, e.g.*, U.S.S.G. § 2J1.2(b)(1)(B); § 5K2.12; § 2B1.1 cmt. background; § 5K2.0 cmt. n.3(B)(ii); § 2J1.3(b)(1).

[6] When parsing the different types of injury to persons, the Guidelines sometimes use the term "bodily injury" to contrast "psychological injury," U.S.S.G. §§ 2N1.1 cmt. n.1, 2Q1.2 cmt. n.9(B); "reputation[al]" injury, *id.* § 2B3.3 cmt. background; or "personal injury," *id.* § 5K2.1. *See generally Physical Injury*, Black's Law Dictionary (11th ed. 2019); *Id.* (*Bodily Injury*). To the extent the Government relies on the appearance of this term to argue physical injury must have a different meaning, encompassing harm to property, it does not account for the comparative context in which "bodily

8

*& Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). Given that consistent usage, the Court cannot escape the maxim that "[a] term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994)**.**

In contrast, when the Sentencing Commission refers to injury to property, it does so using the terms "damage," "loss," or "destruction." *See, e.g.*, *id.* at §§ 5K2.5 (referring to "property damage or loss"); 2C1.1(c)(3) (referring to "property destruction"); *see also supra* n.5. So when the Commission defined guidelines extortion using the term "physical injury," we must assume it did so deliberately and consistently with its usage in surrounding provisions because "differences in language . . . convey differences in meaning." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017) (citation omitted).

In short, the complexity of the Government's argument cannot obscure the simplicity of the categorical mismatch before us: whether we compare it to guidelines robbery or guidelines extortion, Hobbs Act robbery sweeps more broadly by including force against property, not just persons. We thus join every Circuit to have considered this question in concluding that Hobbs Act robbery is not a "crime of violence" under the Guidelines.

## B. The Error Is Plain

Because Hobbs Act robbery is not a crime of violence, it was error to count it as a predicate offense for Scott's career offender enhancement. *See* U.S.S.G. § 2K2.1(a)(2). All that remains, then, is to decide if the outstanding *Olano* factors are met, *i.e.*, if the error is plain, if it affects the defendant's "substantial rights," and, if so, whether leaving it uncorrected would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 733–36 (citations omitted). Each of these prongs is satisfied here by the application of the career offender enhancement.

---

injury" is used, or the equivalence of "physical injury" and "bodily injury" elsewhere throughout the Guidelines.

An error is "plain" where it is "clear" or "obvious," *Olano*, 507 U.S. at 734, and it need not be clear or obvious under a "perfectly analogous case," *Irvin*, 369 F.3d at 290, or even under the case law of the circuit, especially where, as here, the error is one of textual interpretation, *see United States* v. *Cole*, 567 F.3d 110, 117 (3d Cir. 2009). As we have previously observed, "the lack of [in-circuit] case law on th[e] specific question does not doom [a finding of plain error]," *United States v. Husmann*, 765 F.3d 169, 177 (3d Cir. 2014), where there are out-of-circuit "decision[s] . . . sufficiently on-point," *Irvin*, 369 F.3d at 292. It is sufficient that the "great weight of [persuasive] authority" supports a contrary result, *Cole*, 567 F.3d at 118, and that threshold is met so long as "the Courts of Appeals that have addressed the question have uniformly held" it so, *United States v. Benjamin*, 711 F.3d 371, 379 (3d Cir. 2013); *see also Cole*, 567 F.3d at 118.

Such is the case here. Of the six Courts of Appeals to consider the Guidelines enhancement, every one has reviewed the language of the Guidelines and the text of the Hobbs Act and has held that its application to the robbery offense is error.[7] *See Prigan*, — F.4th —, 2021 WL 3612176, at *1 (Hobbs Act robbery); *Green*, 996 F.3d at 184 (same); *Bridges*, 991 F.3d at 802 (same); *Eason*, 953 F.3d at 1195 (same); *Camp*, 903 F.3d at 604 (same); *cf. Edling*, 895 F.3d at 1157 (equivalent state robbery statute); *O'Connor*, 874 F.3d 1147 (reaching the same conclusion regarding Hobbs Act robbery under the rule of lenity).

Of course, we in no way fault the District Court for failing to appreciate the significance of this unanimity. Indeed, it could not have done so, for four of the six decisions post-dated Scott's sentencing. But "plain-error review is not a grading system for trial judges. It has broader purposes, including . . . allowing courts of appeals better to identify those

---

[7] Four of those courts relied on a non-precedential opinion of our Court, *United States* v. *Rodriguez*, 770 F. App'x 18, 21–22 (3d Cir. 2019), agreeing with its reasoning and conclusion. *See Prigan*, — F.4th —, 2021 WL 3612176, at *1;. *Green*, 996 F.3d at 179; *Bridges*, 991 F.3d at 800; *Eason*, 953 F.3d at 1193 n.6. Today, we too endorse that reasoning precedentially.

instances in which the application of a new rule of law to cases on appeal will meet the demands of fairness and judicial integrity." *Henderson*, 568 U.S. at 278 (citing *Johnson v. United State*, 520 U.S. 461, 467–68 (1997); *Olano*, 507 U.S. at 732). With that focus on fairness and judicial integrity in correcting errors on appeal, we assess whether "an error [is] 'plain' at the time of appellate consideration," *Johnson*, 520 U.S. at 468, regardless of the state of the law at the time of the district court's disposition.

Because our inquiry is simply whether the "error [is] plain 'under *current* law,'" *id.* at 467 (emphasis added), a district court's ruling may be reasonable or even correct under the law at the time of its decision, yet it can become "error," and error that is "plain," as a result of intervening authority, *id.* at 468. That authority may emanate from the Supreme Court or from a consensus among the Circuits. That is because, as the Supreme Court made explicit, the Courts of Appeals, not just the Supreme Court, "clarify the law through their opinions," and whether such a clarification renders an earlier district court decision to the contrary "plainly erroneous" is a "matter[] of degree, not kind." *Henderson*, 568 U.S. at 278.

Here we have not merely consensus, but complete unanimity, as might be expected after each and every one of those Circuits has plodded through the requisite categorical analysis[8] concluding that the plain language of the Guidelines

---

[8] To be sure, the categorical approach as an analytical tool may be anything but plain in the colloquial sense. But we are tasked with assessing "plain error" as a legal term of art, guided by our precedent. *See Husmann*, 765 F.3d at 177. Under that precedent, the categorical approach itself does not foreclose plain error. To the contrary, the Supreme Court has cautioned "that a '*per se* approach to plain-error review is flawed.'" *Puckett v. United States*, 556 U.S. 129, 142 (2009) (citation omitted). And for that reason, this Court and other Courts of Appeals have often found plain error in a district court's application of the categorical approach, notwithstanding the explication necessary for that analysis. *See, e.g.*, *United States v. Dahl*, 833 F.3d 345, 357–58 (3d Cir. 2016); *United States v. Titties*, 852 F.3d 1257, 1275 (10th

precludes Hobbs Act robbery from qualifying as a crime of violence under U.S.S.G. § 4B1.2(a). Nor is this unanimity surprising given "[t]hat [the] error was clear in light of the plain language of the relevant Guidelines provision" itself. *United States v. Stinson*, 734 F.3d 180, 187 (3d Cir. 2013); *see supra* Section II.A.2.i. And "[c]oupled with the relative clarity of the Sentencing Guidelines," this consensus is sufficient "to satisfy the requirement that error be 'plain.'" *Irvin*, 369 F.3d at 292; *accord Cole*, 567 F.3d at 117 (determining that the unanimous decisions of four Circuits interpreting the same text rendered error plain).

To establish this error affected his substantial rights, Scott must show it "prejudic[ed] [him]," and "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. The Government concedes it did: Without the crime of violence enhancement, Scott's base offense level was 20, with a range of 57 to 71 months' imprisonment, but with it, his offense level became 24, producing a range of 84 to 105 months—and, in fact, he was sentenced to 90 months' imprisonment. Because there is no doubt that, "but for the claimed error, 'the result of the proceeding would have been different,'" Scott has met his burden of "[d]emonstrating 'a prejudicial effect on the outcome of [his] judicial proceeding.'" *United States v. Payano*, 930 F.3d 186, 192 (3d Cir. 2019) (citation omitted).

At the final prong of *Olano*, we need not correct this error unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (alteration in original). But, again, Scott has carried his burden. In *Rosales-Mireles v. United States*, the Supreme Court explained that, "[i]n the context of a plain Guidelines error that affects substantial rights, that diminished view of [judicial] proceedings ordinarily will satisfy *Olano*'s fourth prong," for "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" 138 S. Ct. 1897, 1908 (2018). Thus,

Cir. 2017); *United States v. Reyes-Ochoa*, 861 F.3d 582, 587–89 (5th Cir. 2017).

in view of *Rosales-Mireles*, the erroneous sentencing-guideline calculation, left uncorrected, would impose a "risk of unnecessary deprivation of liberty [that] particularly undermines the fairness, integrity, or public reputation of judicial proceedings." *Id.*

### III. Conclusion

For the foregoing reasons, we will vacate Scott's sentence and remand for resentencing in line with this opinion.

*United States of America v. Scott*, No. 20-1514
PHIPPS, *Circuit Judge*, dissenting.

The Majority Opinion ably performs a complex and detailed legal analysis to conclude for the first time precedentially in this Circuit that, under the categorical approach, Hobbs Act robbery, *see* 18 U.S.C. § 1951(b)(1), is not a "crime of violence" under the career-offender provision of the United States Sentencing Guidelines, *see* U.S.S.G. § 4B1.2(a). Because Appellant did not preserve that issue in District Court, the plain-error standard governs his appeal. Consistent with its namesake, that standard, through its second prong, requires more than just a finding of error: the error must also be plain. Here, the legal analysis is intricate, if not abstruse – anything but plain – and for that reason, I do not believe that Appellant satisfies the 'plain' requirement for plain-error review. Accordingly, I would affirm the judgment of the District Court, and I respectfully dissent.

An error is plain when it is "obvious" or, equivalently, "clear under current law."[1] The more complex or counterintuitive the legal analysis is, the less plain it is.[2] In this

---

[1] *United States v. Olano*, 507 U.S. 725, 734 (1993) ("'Plain' is synonymous with 'clear' or, equivalently, 'obvious.'"); *United States v. Vazquez*, 271 F.3d 93, 100 (3d Cir. 2001) (en banc); *see also* Fed. R. Crim. P. 52(b); Charles Alan Wright, Arthur A. Miller & Peter J. Henning, 3B *Federal Practice & Procedure – Federal Rules of Criminal Procedure* § 856 (4th ed. Oct. 2020 Update).

[2] *See United States v. Jabateh*, 974 F.3d 281, 299 (3d Cir. 2020) (explaining that as the inquiry becomes deeper, the

1

case, the legal analysis – which involves the categorical approach – is both complex and counterintuitive. And before today, this Circuit had not precedentially applied the categorical approach to the dispositive issue here: whether Hobbs Act robbery constitutes a crime of violence under the Guidelines.[3] Yet as the Supreme Court has held, "a court of appeals cannot correct an error [on plain-error review] unless the error is clear under current law."[4]

As far as I can tell, no one has ever described the categorical approach as clear, obvious, simple, or straightforward.[5] To the contrary, one Supreme Court Justice explained that the categorical approach requires "sentencing judges to delve into pointless abstract questions," as opposed to "real-world" considerations.[6] Another Justice recognized that the approach produces "arbitrary and inequitable results."[7] A third Justice described it as an "absurdity," explaining that it "is difficult to

---

correct outcome becomes "less obvious"), *petition for certiorari docketed*, 20-1369 (U.S. 2021).

[3] *Cf. United States v. Rodriguez*, 770 F. App'x. 18 (3d Cir. 2019) (nonprecedential).

[4] *Olano*, 507 U.S. at 734.

[5] Even proponents of the categorical approach confess that "[a]t first blush, it may seem counterintuitive." Amit Jain & Phillip Dane Warren, *An Ode to the Categorical Approach*, 67 UCLA L. Rev. Disc. 132, 138 (2019).

[6] *Mathis v. United States*, 136 S. Ct. 2243, 2268–69 (2016) (Alito, J., dissenting).

[7] *Id.* at 2258 (Kennedy, J., concurring).

apply."[8]  Two other Justices expressed concern that the categorical approach "unnecessarily complicate[s] federal sentencing law."[9]  And several other Justices joined in the remark that under the categorical approach, "[s]omething has gone badly astray."[10]

Similarly, no judge in this Circuit has described the categorical approach as obvious or clear.  One colleague explained that it requires judges "to close their eyes to what is obvious,"[11] while another described its "catechism of inquiry" as "ludicrous."[12]  Moreover, multiple precedential opinions

---

[8] *Quarles v. United States*, 139 S. Ct. 1872, 1880–81 (2019) (Thomas, J., concurring).

[9] *Mathis*, 136 S. Ct. at 2259 (Breyer, J., dissenting, joined by Ginsburg, J.).

[10] *See Borden v. United States*, 141 S. Ct. 1817, 1856 (2021) (Kavanaugh, J., dissenting, joined by Roberts, Alito, and Barrett, JJ.) ("Something has gone badly astray when this Court is suggesting that second-degree murder and manslaughter might not involve the 'use of physical force against the person of another.'").  *See generally United States v. Williams*, 898 F.3d 323, 336 (3d Cir. 2018) (Hardiman, J., concurring in part and concurring in the judgment) (observing that "several Justices have expressed dissatisfaction with the categorical approach generally").

[11] *United States v. Chapman*, 866 F.3d 129, 139 (3d Cir. 2017) (Jordan, J., concurring).

[12] *Williams*, 898 F.3d at 337 (Roth, J., concurring).

recognize that the approach is "counterintuitive,"[13] and another expressed "dismay at having to employ the categorical approach."[14] Even the Majority Opinion characterizes the categorical approach as "oft-bedeviling."

Those assessments are widely shared by judges in our sister circuits. Beyond expressions of disbelief as to the outcomes it generates,[15] they have described the approach as "complicated,"[16] an "absurd[] exercise,"[17] a "judicial charade,"[18] a "protracted ruse" for paradoxical findings,[19] a "morass" requiring "legal gymnastics,"[20] a "long-baffling"

[13] *Cabeda v. Att'y Gen.*, 971 F.3d 165, 166 (3d Cir. 2020); *United States v. Mayo*, 901 F.3d 218, 230 (3d Cir. 2018).

[14] *Moreno v. Att'y Gen.*, 887 F.3d 160, 163 n.3 (3d Cir. 2018).

[15] *See, e.g.*, *United States v. Begay*, 934 F.3d 1033, 1042 (9th Cir. 2019) (Smith, N.R., J., dissenting in part) ("MURDER in the second-degree is NOT a crime of violence???").

[16] *United States v. Perez-Silvan*, 861 F.3d 935, 944 (9th Cir. 2017) (Owens, J., concurring).

[17] *United States v. Scott*, 990 F.3d 94, 125 (2d Cir. 2021) (en banc) (Park, J., concurring), *petition for certiorari docketed*, 20-7778 (U.S. 2021).

[18] *Ovalles v. United States*, 905 F.3d 1231, 1253 (11th Cir. 2018) (en banc) (Pryor, J., concurring).

[19] *United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring).

[20] *Lopez-Aguilar v. Barr*, 948 F.3d 1148, 1149 (9th Cir. 2020) (Graber, J., concurring).

undertaking,[21] a "struggle[] to understand,"[22] and an inquiry that "crush[es] common sense"[23] with "bizarre" effects that lead to judicial "puzzlement."[24]

But the Majority Opinion says that the application of the categorical approach here is clear and obvious. It does so even despite the lack of on-point, binding circuit precedent.

If nothing else, the deep and layered analysis that the Majority Opinion admirably undertakes demonstrates that the error here was not obvious or clear under current law. The Majority Opinion first examines the relevant elements of Hobbs Act robbery. Next, it accounts for both methods through which a prior offense may qualify as a crime of violence under the career-offender Guideline, *see* U.S.S.G. § 4B1.2(a). Then it rules out the first of those methods, the elemental approach, because the elements of Hobbs Act robbery sweep more broadly than the elements identified in that Guideline. For the second method, the enumerated-offense approach, the Majority Opinion identifies two enumerated offenses (extortion and robbery) as candidates for elemental equivalence to Hobbs Act robbery. The Majority Opinion then sets forth the Guidelines' elemental definition of

[21] *United States v. Burris*, 912 F.3d 386, 407 (6th Cir. 2019) (en banc) (Thapar, J., concurring).

[22] *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 917 (9th Cir. 2011) (en banc).

[23] *United States v. Escalante*, 933 F.3d 395, 406 (5th Cir. 2019).

[24] *United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017) (O'Scannlain, J., specially concurring).

the first offense, extortion. For the other enumerated offense, robbery, however, the Majority Opinion references a generic meaning for that offense. After doing so, it determines – for the first time precedentially in this Circuit – that the elements of those two enumerated offenses may be combined for purposes of the categorical approach. The Majority Opinion then concludes that Hobbs Act robbery sweeps more broadly than the combined elements of both of those enumerated offenses. It does so through a detailed textual analysis that examines the usage of 'physical injury' throughout the Sentencing Guidelines to conclude that the term excludes harm to property. And because Hobbs Act robbery can be proved by harm to property, it does not categorically match the combined elements of robbery and extortion under the Guidelines.

That is a lot of work for an obvious conclusion. Many of those steps are not obvious or clear in themselves. And in aggregate, the categorical-approach analysis needed to establish error is far removed from what can be fairly described as obvious or clear.[25] The outcome, too, strains common sense: the conclusion that Hobbs Act robbery is not robbery or even extortion sounds more like the answer to a trick question than an obvious or clear proposition.

But the Majority Opinion says that the error is plain. It does so because other circuits have uniformly reached that result. That condition alone, however, has never been sufficient to justify the plainness of an error. Uniform out-of-circuit

---

[25] Although categorical-approach errors are not plain *per se*, the complexity inherent in the categorical approach counsels that only in rare instances would such an error be plain. This is not such an exceptional case.

6

precedent must be combined with some other factor – such as a concession by the government[26] or a clearly erroneous application of statutory law[27] – to establish plain error. The Supreme Court recognizes as much by explaining that "a new rule of law, set forth by an appellate court, cannot automatically lead that court to consider all contrary determinations by trial courts *plainly* erroneous."[28] And here the Government does not concede; it vigorously argues that those circuits erred in several respects – and its position is far from frivolous. By minimizing the strength of the Government's argument, which presents a reasonable dispute,[29] the Majority Opinion deviates from this Circuit's precedent[30] and makes a finding of plainness based solely on the uniformity of cases in five other circuits – only one of which was decided before February 25, 2020, the date the District Court imposed the sentence in this case.[31] Also, by

---

[26] *See United States v. Benjamin*, 711 F.3d 371, 379 (3d Cir. 2013).

[27] *See United States v. Cole*, 567 F.3d 110, 117 (3d Cir. 2009).

[28] *Henderson v. United States*, 568 U.S. 266, 278 (2013).

[29] *See Puckett v. United States*, 556 U.S. 129, 135 (2009) (explaining that an error that is "subject to reasonable dispute" is not plain).

[30] *See United States v. Harris*, 471 F.3d 507, 512 (3d Cir. 2006) (declining to find an error "plain" because the Supreme Court had not previously ruled on the issue nor "had this Court in a precedential opinion").

[31] *Compare United States v. Camp*, 903 F.3d 594 (6th Cir. 2018), *with United States v. Prigan*, 8 F.4th 1115 (9th Cir. 2021), *United States v. Green*, 996 F.3d 176 (4th Cir. 2021),

7

fastening the plainness analysis onto the results of other circuits, the Majority Opinion diminishes this Circuit's independent obligation to say what the law is.[32]

In debilitating the plain-error rule, the Majority Opinion affronts the Supreme Court's guidance to preserve the exacting nature of the standard.[33] Today's ruling improperly minimizes

*Bridges v. United States*, 991 F.3d 793, 801 (7th Cir. 2021), *and United States v. Eason*, 953 F.3d 1184 (11th Cir. Mar. 24, 2020). The Majority Opinion affords no weight to the later-in-time resolution of four of those cases because it cites *Henderson* for the proposition that plainness is evaluated at the time of review, not the time of error. But the rule in *Henderson* applies only to "an intervening *authoritative* legal decision," such as the intervening Supreme Court decision at issue there. *Henderson*, 568 U.S. at 270, 273 (emphasis added). *Henderson* did not address the impact of intervening non-binding decisions, much less the role of those later-in-time cases in assessing out-of-circuit uniformity. And without those later decided cases, the Majority Opinion cannot establish out-of-circuit uniformity.

[32] *See generally* 28 U.S.C. § 41 (setting forth thirteen distinct circuit courts); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

[33] *See United States v. Young*, 470 U.S. 1, 15 (1985) (cautioning against "[a]ny unwarranted extension of [the] exacting definition of plain error" because doing so would skew the "'careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly

8

the consequences for missed objections;[34] instead, it favors performing, for the first time on appeal, a layered and nuanced analysis under the categorical approach coupled with a survey of later-in-time, out-of-circuit precedent. That meticulous undertaking – which sets precedent for the first time in this Circuit – has none of the hallmarks of correcting a *plain* error, so I would affirm the judgment of the District Court.

---

redressed'" (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982))).

[34] *See United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (explaining that the plain-error rule seeks "to encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved error"); *United States v. Vonn*, 535 U.S. 55, 73 (2002) (explaining that the plain-error rule is grounded in "the value of finality," and thus the rule "requires defense counsel to be on his toes"); *see also Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1911 (2018) (Thomas, J., dissenting).