**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2786
_____

UNITED STATES OF AMERICA

v.

JUNIOR ABREU,
                          Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-18-cr-00663-001)
District Judge:  Hon. Kevin McNulty
_____

Argued September 29, 2021

Before:   AMBRO, KRAUSE, and BIBAS, *Circuit Judges.*

(Filed: May 2, 2022)

Louise Arkel [ARGUED]
Peter M. Carter
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07102
        *Counsel for Appellant*

Mark E. Coyne [ARGUED]
Steven G. Sanders
Office of United States Attorney
970 Broad Street – Room 700
Newark, NJ 07102
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

Words matter, but so does their placement, and in the context of the U.S. Sentencing Guidelines, whether they appear in the text or the commentary can make a significant difference in a defendant's term of imprisonment. Here, Appellant Junior Abreu argues it was error to apply a sentencing enhancement under U.S.S.G. § 2K2.1 based on a prior conspiracy offense, and we must decide whether to defer to the commentary to § 2K2.1, which purports to define the term "crime of violence" to encompass conspiracy crimes, or to adhere to the Guidelines' text, which says no such thing. In view of recent Supreme Court precedent, we are constrained to hold that conspiracy to commit a crime of violence does not count as a "crime of violence" for purposes of § 2K2.1. We will therefore vacate Abreu's sentence and remand for resentencing.

## I.     **Factual and Procedural Background**

In June 2020, Abreu pleaded guilty to possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). In anticipation of his sentencing, the United States Probation Office prepared a Presentence Report (PSR), calculating his Guidelines range by using the enhancement that applies if a defendant "committed any part of the instant offense" after a felony conviction for either a "crime of violence" or a "controlled substance offense." U.S.S.G. § 2K2.1(a)(4). In Abreu's case, the enhancement was predicated on a purported "crime of violence": his prior conviction for conspiracy to commit second-degree aggravated assault under New Jersey law, resulting in an offense level of 22 and an advisory Guidelines range of 51–63 months' imprisonment.

The Government urged the Court to follow the PSR, arguing that conspiracy to commit a crime of violence qualified as a "crime of violence" under § 2K2.1 no less than the substantive offense. It based that argument on U.S.S.G. § 4B1.1, the so-called "Career-Offender Guideline," and the

2

definitions to which it refers in U.S.S.G. § 4B1.2.  Under those definitions, "crime of violence" means one of the enumerated offenses in § 4B1.2(a)(2), or an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another," as specified in § 4B1.2(a)(1).  The commentary to that guideline, however, states that "[f]or purposes of this guideline," the term also encompasses "conspiring . . . to commit [a crime of violence]."  U.S.S.G. § 4B1.2 & cmt. 1.  Because the commentary to § 2K2.1 states that "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2," U.S.S.G. § 2K2.1 cmt. 1, the Government contended that "crime of violence," for purposes of § 2K2.1(a)(4), must likewise include conspiracy offenses.

Abreu objected on the ground that conspiracy to commit a crime of violence requires only an *agreement* to commit an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), and does not itself include that element.  Thus, he argued, citing to *Stinson v. United States*, 508 U.S. 36, 43–45 (1993), that the District Court must disregard the commentary because it is inconsistent with the Guidelines' text, and that, as a result, his conspiracy offense did not qualify him for the enhancement under § 2K2.1(a)(4).  Accordingly, he argued, he should be sentenced using an offense level of only 16 and an advisory Guidelines range of 27–33 months instead of 51–63 months.

The District Court sided with the Government.  It reasoned that under *United States v. Hightower*, 25 F.3d 182, 187 (3d Cir. 1994), inchoate crimes like conspiracy counted under the "controlled substance offense" prong of § 4B1.2, so they must also count under its "crime of violence" prong, and that because § 2K2.1's commentary defined "crime of violence" by reference to § 4B1.2, the same must be true of § 2K2.1.  Thus, concluding it was bound by *Hightower*, the District Court adopted the calculations of the PSR, applied the § 2K2.1(a)(4) enhancement, and sentenced Abreu to 56 months' imprisonment and three years' supervised release.

Several months later, however, we revisited *Hightower* in light of an intervening Supreme Court case, *Kisor v. Wilkie*,

139 S. Ct. 2400 (2019). *Kisor* "reinforce[d] the limits" of the deference we may afford to agencies' interpretations of their regulations by reminding us that "the possibility of deference can arise only if a regulation is genuinely ambiguous." *Id.* at 2414, 2423. Based on the Court's instruction there to "exhaust all the traditional tools of construction" before concluding that a rule is "genuinely ambiguous," *id*. at 2415 (internal quotations omitted), we took a second look at § 4B1.2 and concluded that the text of the "controlled substance offense" prong unambiguously excluded inchoate crimes, *United States v. Nasir*, 982 F.3d 144, 160 (3d Cir. 2020) (en banc), *vacated and remanded*, 142 S. Ct. 56 (2021), *aff'd in relevant part*, 17 F.4th 459, 468 (3d Cir. 2021) (en banc). We thus declined to defer to the commentary, overruled *Hightower*, and vacated the defendant's sentence under the Career-Offender Guideline, holding that inchoate crimes do not qualify as "controlled substance offenses" under § 4B1.2. *Id.*

Now, on appeal, Abreu argues that, applying the reasoning that led us to overrule *Hightower* in *Nasir*, conspiracy crimes likewise cannot qualify as "crimes of violence" under § 4B1.2, and because the District Court predicated its interpretation of § 2K2.1 on an erroneous understanding of § 4B1.2, he must be resentenced without the § 2K2.1(a)(4) enhancement.

## II.  **Discussion**[1]

"Whether an offense qualifies as a crime of violence under the Sentencing Guidelines is a legal question that this Court typically reviews de novo." *United States v. Scott*, 14 F.4th 190, 194 (3d Cir. 2021). In this case, however, the Government urges us to review only for plain error on the ground that Abreu failed to preserve his argument in the District Court. *See Davis v. United States*, 140 S. Ct. 1060, 1061 (2020); *Scott*, 14 F.4th at 194; Fed. R. Crim. P. 52(b). We therefore address the proper standard of review before

---

[1] The District Court exercised jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

considering whether the term "crime of violence" as used in § 2K2.1 includes conspiracy crimes.

## A.    The Proper Standard of Review

The first question we address is whether Abreu's arguments in the District Court were sufficiently particularized to preserve his challenge to *Hightower*.  We clarified the degree of particularity required in *United States v. Joseph*, where we explained that "a party must make the same argument in the District Court that he makes on appeal" in order to preserve it.[2]  730 F.3d 336, 341 (3d Cir. 2013).  We distinguished between raising an issue before the district court, which "is insufficient to preserve for appeal all arguments bearing on that issue," and raising an argument, which can be pressed on appeal, but only if it "depend[s] on both the same legal rule and the same facts as the argument presented in the District Court."  *Id.* at 341–42.  That condition is "essential to the proper functioning of our adversary system because even the most learned judges are not clairvoyant" and "we do not require [them] to anticipate and join arguments that are never raised by the parties."  *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010) (citations omitted).

---

[2] We had declined to determine in *Joseph* whether this framework applies beyond the context of Rule 12 of the Federal Rules of Criminal Procedure, which requires parties to raise certain defenses, objections, and requests by pretrial motion to avoid waiver.  *United States v. Joseph*, 730 F.3d 336, 339 n.3 (3d Cir. 2013).  But we have since used it to determine whether we should review an argument *de novo* or for plain error in the context of Rule 52(b) of the Federal Rules of Civil Procedure, which provides that arguments not brought to the district court's attention are generally reviewable for plain error.  *See United States v. Grant*, 9 F.4th 186, 199–200 (3d Cir. 2021); *see also Spireas v. Comm'r of Internal Revenue*, 886 F.3d 315, 321 n.9 (3d Cir. 2018) (clarifying that although *Joseph* arose out of the Rule 12 context, it "provides the governing rule" for the "threshold question of whether an argument was made" in the district court for both civil and criminal cases).

Notably, we did not say that a party must have made the same argument verbatim before the district court. To the contrary, we observed that "[p]arties are free . . . to place greater emphasis and more fully explain an argument on appeal than they did in the District Court . . . [or] even, within the bounds of reason, reframe their argument." *Joseph*, 730 F.3d at 341. And although we cautioned that "[t]here is a limit . . . on the extent to which an argument may be reframed," as "[r]evisions at some point become differences in kind," we made clear that parties have leeway to change the way they present their arguments on appeal so long as they do not "change the[ir] substance." *Id.* at 341 & n.5. The ultimate question is whether the parties "g[a]ve the District Court the opportunity to consider the argument." *Dupree*, 617 F.3d at 731.

Abreu met that standard here. In the sentencing memorandum he submitted objecting to the § 2K2.1(a)(4) enhancement, he argued that the District Court "must ignore" the commentary to § 4B1.2 because it was inconsistent with the text. App. 64–65. Specifically, he urged that the commentary may have related to the "residual clause" of the Armed Career Criminal Act, but once the Supreme Court held in *Johnson v. United States*, 576 U.S. 591, 597 (2015), that the "residual clause" was unconstitutionally vague and the Sentencing Commission struck an identical clause from § 4B1.2(a), *see Brown v. United States*, 139 S. Ct. 14, 15 (2018) (Sotomayor, J., dissenting), the commentary could no longer be viewed as interpreting or explaining the text that remained. In support of his argument, Abreu cited *Stinson*, 508 U.S. at 43–45, which addressed the weight courts should give to the Commission's commentary by analogizing it to an agency's interpretation of its own legislative rule, and he argued that no weight was due § 4B1.2's commentary because it did not merely interpret the term "crime of violence" but expanded its textual definition.

On appeal, although he frames it slightly differently, Abreu makes the same argument. He contends that § 4B1.2(a)'s definition of "crime of violence" unambiguously excludes conspiracy crimes, so it would be improper to defer to commentary that says they are included. Although he now cites to *Kisor*, 139 S. Ct. at 2414–15, a different, more recent

6

Supreme Court case, preservation requires advancement of the same legal principle, not citation to the same legal precedent. In any event, *Kisor* merely clarified the same doctrinal rule at issue in *Stinson*: the deference owed to an agency's interpretation of its own regulations, with the same implications for *Hightower*. Abreu's argument thus rests on "both the same legal rule," *i.e.*, that courts should not defer to contrary agency guidance in the face of clear text, "and the same facts . . . presented in the District Court," *i.e.*, the tension between the commentary and the definition of "crime of violence" in the text. *Joseph*, 730 F.3d at 342.

Were there any doubt that Abreu "g[a]ve the District Court the opportunity to consider the argument" at sentencing, *Dupree*, 617 F.3d at 731, we need look no further than the sentencing hearing, where the District Court explained it was applying the § 2K2.1(a)(4) enhancement because it still "regard[ed] [*Hightower*] as binding." App. 126–27. Because Abreu preserved his argument, we proceed to review it *de novo*.

### B.    Conspiracy Is Not a Crime of Violence Under § 2K2.1

We turn next to the substance of Abreu's argument. Section 2K2.1, like the Career-Offender Guideline, increases defendants' Guidelines ranges based on prior convictions for crimes of violence. But unlike the Career-Offender Guideline, it is not followed by a guideline that defines its terms. *Cf.* U.S.S.G. § 4B1.2 ("Definitions of Terms Used in Section 4B1.1"). Nor is the term "crime of violence" defined within the text of § 2K2.1 itself. Nonetheless, the commentary to § 2K2.1 states that "'[c]rime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1 cmt. 1. It is unsurprising, then, that both parties tout the teachings of § 4B1.2. The lessons they would have us draw, however, are polar opposites.

Abreu takes the position that *Nasir* is dispositive. He contends that our holding there as to the exclusion of inchoate crimes from the definition of "controlled substance offenses" under § 4B1.2(b) applies equally to § 4B1.2(a), and because the omission of conspiracy from the "many other offenses"

7

listed in § 4B1.2(a) "alone indicates that it does not include them," *Nasir*, 17 F.4th at 471, the commentary cannot alter their unambiguous exclusion from the definition of "crime of violence."

The Government acknowledges *Nasir* but seeks to cabin it in two ways, neither of which is persuasive. First, it points out that *Nasir* addressed only § 4B1.2(b), finding that the term "controlled substance offenses" unambiguously excludes inchoate crimes because it references only substantive offenses and omits any mention of inchoate crimes. In contrast, the Government argues, § 4B1.2(a) defines "crime of violence" to include not only the use of force but also the "attempted use" of force, which indicates that it includes inchoate crimes, or at least introduces some ambiguity. If anything, however, this argument cuts the other way, for it makes clear that the Sentencing Commission knew how to include inchoate offenses in the Guidelines and opted here to include only attempt in the text, not conspiracy. *See Nasir*, 17 F.4th at 471 (observing that the inclusion of attempt in § 4B1.2(a) "suggests that the omission of inchoate crimes from [§ 4B1.2(b)] was intentional"); *see also United States v. Havis*, 927 F.3d 382, 386 (6th Cir. 2019) ("[T]he Commission knows how to include attempt crimes when it wants to—in subsection (a) of [§ 4B1.2], for example, the Commission defines 'crime of violence' as including offenses that have 'as an element the use, *attempted* use, or threatened use of physical force against the person of another.'" (emphasis in original)); *United States v. Winstead*, 890 F.3d 1082, 1091 (D.C. Cir. 2018) (noting that "the Commission showed within [the definition of 'crime of violence' in] § 4B1.2 itself that it knows how to include attempted offenses when it intends to do so.").

Second, the Government observes that unlike § 4B1.1, which refers to § 4B1.2, and hence its definitions, in the text, § 2K2.1 offers neither a definition nor a cross-reference for the term "crime of violence." From this, the Government ascribes to § 2K2.1 ambiguity lacking in § 4B1.1 and justification for the Sentencing Commission to interpret "crime of violence" in § 2K2.1 through commentary. The Government finds further justification in the fact that the commentary to § 2K2.1 references not only § 4B1.2 but also its commentary, *see* U.S.S.G. § 2K2.1 cmt. 1, so from the commentary referencing

8

the commentary, the Government would have us conclude that "crime of violence" in § 2K2.1 includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses," U.S.S.G. § 4B1.2 cmt. 1.

We decline to thread this daisy chain of commentary or to "wave the ambiguity flag," *Kisor*, 139 S. Ct. at 2415, just because § 2K2.1 does not define "crime of violence" in its text. Instead, the Supreme Court has instructed us to "exhaust all the 'traditional tools' of construction," including text, structure, history, and purpose, before finding genuine ambiguity. *Id.* (quoting *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)); *see also Scott*, 14 F.4th at 197 n.4 ("The same '[b]asic tenets of statutory construction,' including the use of canons of construction, apply when interpreting the Sentencing Guidelines." (quoting *United States v. Grier*, 585 F.3d 138, 143 (3d Cir. 2009))). The application of these tools here precludes that finding.

We start with the Guidelines' text and structure. Normally, having concluded that conspiracy is not a "crime of violence" under § 4B1.2, we might impute the same meaning to the term in § 2K2.1 based on the canon that presumes "identical words used in different parts of the same act . . . [generally] have the same meaning." *Scott*, 14 F.4th at 197 (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932)); *see also Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007). But as the Government points out, commentary to yet another guideline, U.S.S.G. § 1B1.1, cautions that "[d]efinitions of terms [that] appear in other sections . . . are not designed for general applicability." U.S.S.G. § 1B1.1 cmt. 2. Put differently, this commentary says we should not simply assume that the "whole-act rule" applies, and we should instead determine a definition's "applicability to sections other than those expressly referenced . . . on a case by case basis." *Id*.

We need not decide today, however, whether we are bound by this commentary or its significance in the wake of *Kisor*, for under either approach the result in this case is the same. If we rely on the whole-act rule, "crime of violence" means the same thing in § 2K2.1 as it does in § 4B1.2, excluding conspiracies. And if we apply the case-by-case

approach, from § 1B1.1's commentary, this is a case where § 4B1.2's definition does carry over to a section "other than [that] expressly referenced." *Id.* After all, the same phrase not only appears in both sections, but it is also used in the same way: to enhance sentences based on prior convictions. *See Bastardo-Vale v. Att'y Gen.*, 934 F.3d 255, 265 (3d Cir. 2019) (acknowledging the presumption that a phrase used in two statutes with similar purposes has the same meaning in both statutes).[3] So, either way, conspiracies do not count as crimes of violence under § 2K2.1, and any commentary that says otherwise does not warrant *Kisor* deference. *See Nasir*, 17 F.4th at 469–72.

In short, the plain text, structure, and purpose of the Guidelines indicate that "there is only one reasonable construction" of "crime of violence" as used in § 2K2.1, *Kisor*, 139 S. Ct. at 2415, and, just as in § 4B1.2(a), that construction excludes conspiracy offenses. As a result, Abreu's prior conviction for conspiracy to commit second-degree aggravated assault does not qualify him for an enhancement under § 2K2.1(a)(4), and the District Court erred in applying that enhancement.

### III.    Conclusion

For the foregoing reasons, we will vacate Abreu's sentence and remand for resentencing in line with this opinion.

---

[3] Additionally, even though we do not accord the commentary to § 2K2.1 *Kisor* deference, its cross-reference to the definition provided in § 4B1.2(a) reinforces the notion that the term "crime of violence" should be interpreted the same way in both guidelines.