Mota v. Barr

# In the
# United States Court of Appeals
## For the Second Circuit

August Term 2019

No. 19-1385

ADERITO FERRAZ MOTA, AKA ADERITO FERRAZ,

*Petitioner,*

v.

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(Argued June 4, 2020; Decided August 17, 2020)

Before: PARKER, LIVINGSTON, and PARK, *Circuit Judges*.

Aderito Ferraz Mota, a lawful permanent resident, was found removable for having been convicted of two crimes involving moral turpitude ("CIMTs") pursuant to § 1227(a)(2)(A)(ii) of the Immigration and Nationality Act. The Board of Immigration Appeals affirmed, reasoning that his two convictions were CIMTs. Mota petitioned for review, arguing that his convictions were not CIMTs because the Connecticut statute at issue, CGS § 21a-277(a)(1), may be violated by a wide range of conduct which is not necessarily morally reprehensible. We **DENY** the petition.

————

JUSTIN CONLON, Law Offices of Justin Conlon, Hartford, CT, *for Petitioner*.

LAURA HICKEIN, Trial Attorney (Joseph H. Hunt, Assistant Attorney General; Shelley R. Goad, Assistant Director, *on the brief*) *for* the Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

Petitioner Aderito Ferraz Mota, a native and citizen of Portugal, entered the United States in May 2007 on a nonimmigrant visa. In April 2011, Mota adjusted his status to that of a lawful permanent resident. In September 2015, Connecticut law enforcement officers executed a search warrant at Mota's apartment and arrested him after finding a number of items consistent with the manufacturing and sale of crack cocaine. In August 2016, Connecticut law enforcement executed another search warrant at a motel and again arrested Mota

after finding crack cocaine and several items consistent with the sale of crack cocaine in the room in which he was staying. In January 2017, based on these arrests, Mota pleaded guilty to two counts of felony possession of narcotics with intent to sell, in violation of Connecticut General Statutes ("CGS") § 21a-277(a)(1).

CGS § 21a-277(a)(1) provides that "[n]o person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, any controlled substance that is a (A) narcotic substance, or (B) hallucinogenic substance." Mota's plea agreement and certificate of disposition demonstrate that he was convicted under subsection (A) of this statute.

In 2018, the Department of Homeland Security charged Mota, based on his two convictions, as removable under 8 U.S.C. § 1227(a)(2)(A)(ii), because he was a noncitizen "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct." The Board of Immigration Appeals has held that crimes involving moral turpitude ("CIMTs") are offenses that contain "two essential elements: reprehensible conduct and a culpable mental state." *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 834 (B.I.A.

3

2016). Mota moved to terminate removal proceedings before an immigration judge, arguing that his convictions did not qualify as CIMTs. However, the immigration judge sustained the charge of removability, and the BIA affirmed. *In re Aderito Ferraz Mota*, No. A 200 383 441 (B.I.A. Apr. 10, 2019), *aff'g* No. A 200 383 441 (Immig. Ct. Hartford Oct. 31, 2018). The BIA reasoned that because the "minimum conduct that has a realistic probability of being prosecuted under the respondent's state statute of conviction necessarily involves inherently reprehensible conduct committed with a mental state of knowledge or intent," Mota's convictions were "crime[s] involving moral turpitude." Certified Administrative Record at 5. In support of this conclusion, the BIA pointed to its prior decisions concluding that the unlawful distribution of narcotics involves inherently reprehensible conduct because, among other things, of the social damage inflicted. *Id.* at 4-5.

Mota petitions for review. We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D). Mota argues that his convictions are not categorical CIMTs because CGS § 21a-277(a)(1) may be violated by conduct that is not necessarily morally reprehensible. The Government, on the other hand, argues that Mota's convictions under CGS § 21a-277(a)(1) qualify as CIMTs. We agree with the Government and we deny the petition.

4

## DISCUSSION

## I.

We afford *Chevron* deference to the BIA's construction of "moral turpitude" but "review *de novo* the BIA's finding that a petitioner's crime of conviction *contains* those elements which have been properly found to constitute a CIMT." *Gill v. INS*, 420 F.3d 82, 89 (2d Cir. 2005). The BIA has explained that "[t]o involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state." *Matter of Silva-Trevino*, 26 I. & N. Dec. at 834. A crime involves reprehensible conduct if that conduct is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Mendez v. Barr*, 960 F.3d 80, 84 (2d Cir. 2020). As to a culpable mental state, "[c]rimes committed knowingly or intentionally generally have been found, on the categorical approach, to be CIMTs." *Gill*, 420 F.3d at 89; *see also Mendez v. Mukasey*, 547 F.3d 345, 347 (2d Cir. 2008) ("[G]enerally, where intent is not an element of a crime, that crime is not one involving moral turpitude."); *Matter of Ruiz-Lopez*, 25 I. & N. Dec. 551, 551 (B.I.A. 2011) (explaining that a crime has a culpable mental state for a CIMT "[w]here knowing or intentional conduct is an element").

To determine whether a conviction contains these elements, the BIA and the courts employ a "categorical approach," focusing on the intrinsic nature of the offense. *Mendez*, 960 F.3d at 84. Under this approach, "we look only to the minimum criminal conduct necessary to satisfy the essential elements of the crime." *Mukasey*, 547 F.3d at 348. A crime qualifies as a CIMT only if "by definition, and in all instances, [it] contain[s] . . . those elements that constitute a CIMT." *Mendez*, 960 F.3d at 84.

As noted, Mota was convicted under CGS § 21a-277(a)(1) of felony possession of narcotics with intent to sell. That statute, as noted, provides:

> No person may manufacture, distribute, sell, prescribe, dispense, compound, transport with the intent to sell or dispense, possess with the intent to sell or dispense, offer, give or administer to another person, except as authorized in this chapter, any controlled substance that is a (A) narcotic substance . . . .

*Id.* Connecticut defines "sale" of a narcotic substance as "any form of delivery which includes barter, exchange or gift, or offer therefor." CGS § 21a-240(50). "[T]o prove that a defendant is guilty of possession of narcotics with intent to sell, the state must prove . . . that the defendant had (1) either actual or constructive possession of a narcotic substance and (2) the intent to sell narcotics." *State v. Billie*, 2 A.3d 1034, 1038 n.7 (Conn. App. Ct. 2010).

CGS § 21a-277(a)(1) includes the required mens rea element. The statute requires that a defendant have the "intent to sell or dispense" or the intent to "offer, give or administer to another person" a narcotic substance. *Id.* In other words, a violation of the statute involves the knowing, unlawful distribution of a controlled substance to others, or possession with the intent to do so. *See id.*; *see also, e.g.*, *State v. Johnson*, 603 A.2d 440, 442 (Conn. App. Ct. 1992) ("A person may be convicted of possession of a narcotic substance with intent to sell when that person knowingly possesses and intends to sell any narcotic substance. . . ."). Since the statute reaches only knowing and intentional conduct, the culpable mental state requirement is met. *See Gill*, 420 F.3d at 89.

We also agree with the BIA that violations of CGS § 21a-277(a)(1) invariably involve vile, reprehensible conduct. *See Rodriguez v. Gonzales*, 451 F.3d 60, 63 (2d Cir. 2006) (discussing the meaning of "moral turpitude"). The BIA has "long held that evil intent is inherent in the illegal distribution of drugs and that 'participation in illicit drug trafficking is a crime involving moral turpitude.'" *Matter of Gonzalez-Romo*, 26 I. & N. Dec. 743, 746 (B.I.A. 2016) (quoting *Matter of Khourn*, 21 I. & N. Dec. 1041, 1046-47 (B.I.A. 1997)); *see also Matter of Khourn*, 21 I. & N. Dec. at 1047 (holding that federal conviction for possession with intent to

7

distribute a controlled substance is a CIMT)).[1] Indeed, we, as well as numerous other courts, have acknowledged the reprehensible conduct inherent in drug trafficking offenses, *see, e.g.*, *Carmona v. Ward*, 576 F.2d 405, 411-12 (2d Cir. 1978), and, as a result, courts have concluded that such offenses involve moral turpitude.[2]

## II.

Mota nevertheless argues that a violation of CGS § 21a-277(a)(1) does not necessarily involve moral turpitude because Connecticut's definition of "sale" covers some conduct that does not involve moral turpitude, including, for example, gifting a small amount of a controlled substance to a friend at a private party. *See, e.g.*, Pet'r Br. at 14. We note, however, that Petitioner's hypothetical-scenario approach is not compatible with the categorical approach. Under the

---

[1] *See also Matter of J.M. Acosta*, 27 I. & N. Dec. 420, 423 (B.I.A. 2018) (holding that New York conviction for attempted criminal sale of a controlled substance in the third degree constitutes a CIMT because the "statute of conviction necessarily involves inherently reprehensible conduct committed with a mental state of knowledge or intent"); *Matter of Y-*, 2 I. & N. Dec. 600, 602 (B.I.A. 1946) (concluding that an unlawful sale of narcotics in violation of Canadian law is a CIMT because the act "creates human misery, corruption, and moral ruin in the lives of individuals" and "is necessarily . . . base and shameful").

[2] *See, e.g.*, *Guevara-Solorzano v. Sessions*, 891 F.3d 125, 128 (4th Cir. 2018) (holding that Petitioner's conviction "for unlawful possession of marijuana with intent to manufacture, deliver, or sell" constitutes a CIMT); *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903-04 (9th Cir. 2007) ("Drug trafficking offenses, including possession of unlawful substances for sale, generally involve moral turpitude."); *United States ex rel. DeLuca v. O'Rourke*, 213 F.2d 759, 762 (8th Cir. 1954) (noting that "there can be nothing more depraved or morally indefensible than conscious participation in the illicit drug traffic").

categorical approach, we focus "on the intrinsic nature of the offense" rather than the particular facts surrounding the petitioner's conviction. *See Mendez*, 960 F.3d at 84. We acknowledge that Connecticut's legislature has broadly defined "sale" to encompass exchanges, gifts, and offers of a narcotic substance even for no consideration. *See* CGS § 21a-240(50); *see also State v. Webster*, 308 Conn. 43, 56 (2013) ("[W]e conclude that the plain meaning of the statute encompasses every instance in which a defendant offers to, or does in fact, 'barter, exchange or gift' narcotics to another."); *Johnson*, 603 A.2d at 442 ("A person may be convicted of possession of a narcotic substance with intent to sell when that person knowingly possesses and intends to sell any narcotic substance, regardless of the amount . . . ."). Nonetheless, the fact that the statute may cover scenarios in which a defendant "offered," "exchanged," or "gifted" a narcotic substance, even a small amount, to a friend for no or little renumeration does not foreclose our conclusion under the categorical approach. *Michel v. INS*, 206 F.3d 263, 265 (2d Cir. 2000) ("[T]he fact that a crime may be considered only a minor offense does not preclude a finding that it involves moral turpitude." (quoting *Matter of Serna*, 20 I. & N. Dec. 579, 582 (B.I.A. 1992)); *Carmona*, 576 F.2d at 411 ("Social harm in drug distribution is great indeed. The drug seller, at every level of distribution, is at the root of the pervasive cycle of destructive drug abuse."). Consequently, the

9

agency did not err in holding that violating CGS § 21a-277(a)(1) involves moral turpitude.

In addition, Mota's attempt to analogize his gift-to-friend scenario as "akin to mere possession" fails. Pet'r Br. at 42. Offenses in violation of CGS § 21a-277(a)(1), unlike "mere possession," always involves some aspect of or relationship to unlawful distribution to others. In any event, Connecticut distinguishes possession for personal use—conduct that does not violate CGS § 21a-277(a)(1)—from possession with intent to sell, which does violate the statute. *See, e.g.*, *Billie*, 2 A.3d at 1040-41, 1043 (finding insufficient evidence to convict under CGS § 21a-277(a) where the defendant possessed a single package of crack cocaine and the prosecution's expert testified "possession of such a small quantity generally is more consistent with possession for personal use rather than with intent to sell").

Next, Mota argues that our decision in *Mendez v. Barr*, 960 F.3d 80 (2d Cir. 2020), compels a different result. We disagree. In *Mendez*, we considered whether misprision of felony, in violation of 18 U.S.C. § 4, constituted a CIMT. We noted that § 4 "makes it a crime for one with knowledge of the commission of a federal felony to conceal it and not promptly report it to the appropriate authorities." *Id.* at 82. In holding that misprision of felony under § 4 does not qualify as a CIMT,

10

we explained that "[n]othing in § 4—either expressly or by reasonable inference—speaks to intent," and that the BIA has repeatedly held "that the indispensable component of a CIMT is 'evil intent,' which means a specific mental purpose that is 'inherently base, vile, or depraved.'" *Id.* at 84 (quoting *Mukasey*, 547 F.3d at 347). We also noted that a person could commit a misprision offense without having evil intent. *Id*. The concern that we had in *Mendez*—that misprision speaks nothing of intent—is simply not present here, where the statute of conviction specifically requires the intent to unlawfully distribute a controlled substance. Moreover, as discussed, *supra*, pp. 7-8, the unlawful distribution of a controlled substance involves reprehensible conduct. Therefore, Mota's reliance on *Mendez* does not yield a different result.

## CONCLUSION

For the foregoing reasons, the petition for review is **DENIED**.