United States of America v. Chappelle

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2021
No. 20-3835

UNITED STATES OF AMERICA,
*Appellant*,

*v.*

DAMON CHAPPELLE, AKA D,
*Defendant-Appellee*,

TYRONE DAVIS, CHARLES BONNER, AKA H,
JAMIL SPELLER, RAHEEM JEFFERSON, ZYKIA SPELLER,
*Defendants*.

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: DECEMBER 2, 2021
DECIDED: JULY 21, 2022

Before: CALABRESI, CHIN, and NARDINI, *Circuit Judges*.

This appeal requires us to decide whether Hobbs Act robbery is a "crime of violence" under the career offender provision of the United States Sentencing Guidelines. U.S.S.G. § 4B1.2(a). Applying the categorical approach, we now hold—joining the seven other Courts of Appeals that have considered the issue—that Hobbs Act robbery is not categorically a "crime of violence" under § 4B1.2(a) because it can apply to violence against property, not just against people. Accordingly, we **AFFIRM** the judgment of the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*).

---

JACOB R. FIDDELMAN (Edward B. Diskant, Won S. Shin, *on the brief*), Assistant United States Attorneys, *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Appellant*.

STEVEN Y. YUROWITZ, Newman & Greenberg LLP, New York, NY, *for Defendant-Appellee*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

This appeal requires us to decide whether Hobbs Act robbery is categorically a "crime of violence" under the career offender provision of the United States Sentencing Guidelines. United States Sentencing Commission, Guidelines Manual § 4B1.2(a) (Nov. 2018)

2

(U.S.S.G.).[1]  Joining the seven other Courts of Appeals that have considered the issue,[2] we conclude that it is not.  That is because Hobbs Act robbery can be committed based solely on violence against property, whereas a "crime of violence" under § 4B1.2 must be based on violence against people.

Chappelle was convicted of conspiracy to commit Hobbs Act robbery.  Application Note 1 to § 4B1.2 provides that, among other things, a conspiracy to commit a crime of violence is itself a crime of violence.  The United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*) held that it was not obligated to defer to Application Note 1 because it was inconsistent with

---

[1] Because Chappelle was sentenced pursuant to the 2018 version of the Guidelines Manual, our holdings in this case apply to the provisions in that Manual.

[2] *United States v. Scott*, 14 F.4th 190, 195 (3d Cir. 2021); *United States v. Prigan*, 8 F.4th 1115, 1120 (9th Cir. 2021); *United States v. Green*, 996 F.3d 176, 179 (4th Cir. 2021); *Bridges v. United States*, 991 F.3d 793, 802 (7th Cir. 2021); *United States v. Eason*, 953 F.3d 1184, 1195 (11th Cir. 2020); *United States v. Camp*, 903 F.3d 594, 604 (6th Cir. 2018); *United States v. O'Connor*, 874 F.3d 1147, 1158 (10th Cir. 2017).

§ 4B1.2(a).[3] It therefore held that Chappelle's conspiracy conviction was not a "crime of violence," calculated Chappelle's advisory Sentencing Guidelines without reference to the career offender provisions, and sentenced him to time served followed by supervised release. The Government appealed.

We need not rule upon the validity of Application Note 1 in this context because the object of Chappelle's conspiracy offense (Hobbs Act robbery) was not a crime of violence as defined by § 4B1.2. And if the object of the conspiracy is not a crime of violence, then the conspiracy itself cannot be one either (at least, not by virtue of Application Note 1). Accordingly, we **AFFIRM** the judgment of the district court.

---

[3] The court concluded that in *United States v. Jackson*, 60 F.3d 128 (2d Cir. 1995), we decided only that Application Note 1 was not inconsistent with § 4B1.2(b) ("controlled substance offense"), and that we did not address whether Application Note 1 was inconsistent with § 4B1.2.(a) ("crime of violence").

## I.  Background

On December 18, 2013, Chappelle was charged in a three-count indictment with conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One), conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count Two), and possession of a firearm during a crime of violence or drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three).  On December 23, 2014, Chappelle pled guilty to Counts Two and Three of the indictment pursuant to a plea agreement specifying that the § 924(c) charge was predicated solely on Count Two.  In the plea agreement, Chappelle stipulated that he was a career offender under § 4B1.1 and waived his right to appeal or collaterally attack any sentence of 327 months in prison or less.

Prior to Chappelle's original sentencing, the United States Probation Office calculated Chappelle's Guidelines range to be 262 to 327 months of imprisonment, just as the parties had stipulated in the plea agreement.  During Chappelle's original sentencing hearing on

5

September 21, 2015, the district court agreed and determined that (under the 2014 U.S. Sentencing Guidelines) Chappelle's conviction for Hobbs Act robbery conspiracy qualified as a crime of violence under § 4B1.2, and therefore (in conjunction with certain of Chappelle's prior convictions) triggered application of the career offender Guideline in § 4B1.1.  As a career offender, Chappelle's total offense level would normally have been 29 and his criminal history category would have been VI by virtue of § 4B1.1(b) (yielding an advisory range of 151 to 188 months), but his § 924(c) conviction triggered a higher range of 262 to 327 months under § 4B1.1(c)(3).  The defense did not object but requested a below-Guidelines sentence for certain reasons unrelated to Chappelle's status as a career offender. The district court sentenced Chappelle to 120 months in prison on Count Two, plus 60 months on Count Three, to run consecutively, followed by five years of supervised release.  The court also granted

the Government's motion to dismiss Count One of the indictment (the drug trafficking charge).

On May 18, 2020, this Court vacated Chappelle's conviction on Count Three under § 924(c) in light of our intervening decision in *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019), which held that conspiracy to commit Hobbs Act robbery is not a predicate crime of violence for purposes of § 924(c). We remanded the matter to the district court to determine whether to resentence Chappelle on Count Two—for Hobbs Act robbery conspiracy—in light of the vacatur of the § 924(c) conviction. On remand, the district court and the parties agreed that resentencing was appropriate.

At resentencing, the district court considered the Probation Office's updated Guidelines calculation. The Probation Office again concluded—this time under the 2018 Guidelines—that Chappelle was a career offender. Applying those Guidelines (this time without a § 924(c) conviction), the Probation Office suggested (and the

7

Government agreed) that Chappelle's advisory Guidelines range was now 151 to 188 months, based on an offense level of 29 and a criminal history category VI.

Chappelle asserted on remand, however, that he was no longer a career offender because his conviction for Hobbs Act robbery is not a crime of violence under § 4B1.2. This argument hinged on the fact that the 2018 career offender Guideline was narrower than the 2014 version because in 2016, the residual catch-all provision had been removed.[4] Specifically, Chappelle argued that Application Note 1,

---

[4] The 2014 career offender Guideline defined a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." U.S.S.G. § 4B1.2(a) (2014) (emphasis added). This latter phrase was removed in 2016, *see* U.S.S.G. Supp. to App'x. C, amend. 798, and thus the 2018 Manual applicable to Chapelle's resentencing provided instead that a "crime of violence" was defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." U.S.S.G. § 4B1.2(a) (2018).

which provides that the definition of a "crime of violence" "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses," U.S.S.G. § 4B1.2 cmt. n. 1 (2018), is now inconsistent with the Guidelines and therefore invalid. Accordingly, using the non-career offender Guidelines, Chappelle argued that his offense level should be 24 and his criminal history category should be III (based on his six criminal history points), resulting in a Guidelines range of 63 to 78 months.

During the resentencing hearing on September 9, 2020, the district court agreed with Chappelle that Application Note 1 was invalid to the extent it incorporated conspiracy offenses into § 4B1.2. The district court reasoned that, under the Supreme Court's decision in *Stinson v. U.S.*, 508 U.S. 36 (1993), Application Note 1 is inconsistent with the Guideline it purports to interpret—§ 4B1.2—because it improperly expands the definition of a "crime of violence" under that section by adding certain inchoate offenses not otherwise

9

encompassed by the definition set forth in the Guideline. Therefore, according to the district court, Application Note 1 is not entitled to the controlling weight afforded to Guidelines commentary that merely interpret or explain a Guideline provision. Accordingly, under the 2018 Guidelines, the district court determined that Chappelle was no longer a career offender. His adjusted offense level was therefore five points lower than at his original sentencing because ten points were subtracted by removing his status as a career offender, while five points were added under § 2B3.1(b)(2) because a firearm was used in connection with the offense. The district court reduced Chappelle's offense level by an additional point without objection from the parties because of a clerical error, resulting in a total offense level of 23. As a result, the district court determined that Chappelle's Guidelines range was 57 to 71 months, based on an adjusted offense level of 23 and a criminal history category III, and

resentenced him principally to time served (about 82 months). The Government now appeals.

## II. Discussion

On appeal, the Government argues that the district court's ruling about Application Note 1 is contrary to controlling precedent and incorrect on the merits. In response, Chappelle argues that: (1) the district court correctly held that Application Note 1 is inconsistent with the plain language of § 4B1.2(a); (2) the Government's argument ignores the distinction between a controlled substance offense and a crime of violence, certain Supreme Court case law, and the substantive changes to § 4B1.2(a) that occurred in 2016—after many of the cases cited by the Government; and (3) any error by the district court is harmless because substantive Hobbs Act robbery is not a "crime of violence" as that term is defined in § 4B1.2(a) and so, even assuming the applicability of Application Note 1, a conspiracy to commit that crime is not itself a crime of violence.

11

For the reasons discussed below, we agree with Chappelle's third argument that substantive Hobbs Act robbery is not a crime of violence as that term is currently defined under the career offender Guideline. It follows that conspiracy to commit that offense cannot be considered a crime of violence under Application Note 1. Accordingly, we need not—and do not—consider the district court's determination regarding whether Application Note 1 is consistent with § 4B1.2(a).

## A. Standard of review

Appellate review of a district court's sentence "encompasses two components: procedural review and substantive review." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). "A district court commits procedural error" when, among other things, "it makes a mistake in its Guidelines calculation." *Id.* At 190. We review *de novo* a "district court's interpretation of the Guidelines," including "whether a particular crime is a 'crime of violence.'" *United States v. Gamez*, 577 F.3d 394, 397 (2d Cir. 2009).

## B. Hobbs Act robbery is not a "crime of violence" under U.S.S.G. § 4B1.2

On appeal, Chappelle argues that even if the district court erred as to the validity of Application Note 1, any such error is harmless because substantive Hobbs Act robbery is not a "crime of violence" under § 4B1.2, and it therefore follows that Hobbs Act robbery conspiracy is also not a "crime of violence." That is so, Chappelle argues, because Hobbs Act robbery's force element can be satisfied by force against property (and not just persons), and so Hobbs Act robbery is categorically broader than § 4B1.2's definition of crime of violence. The Government argues that we should decline to decide this question on the merits (to allow the district court to address it in the first instance), and, alternatively, argues that Hobbs Act robbery is categorically a crime of violence because it is no broader than the enumerated offenses of robbery and extortion.[5]

---

[5] In the alternative, the Government urges us to consider Chappelle's underlying conduct to determine whether his Hobbs Act robbery conspiracy is a

We are free to affirm a district court's ruling on any basis that appears in the record. *See Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 413 (2d Cir. 2014). Both parties have adequately briefed the question of whether substantive Hobbs Act robbery is a crime of violence under the 2018 version of § 4B1.2, and so we exercise our discretion to reach that issue now.

A defendant is a "career offender" if (1) he was at least eighteen years old at the time of the instant offense of conviction; (2) the instant

---

crime of violence. The Government relies on our reasoning in *United States v. Barrett*, 903 F.3d 166, 182 (2d Cir. 2018), to argue that such an inquiry is permissible. But *Barrett*, as the Government acknowledges, was abrogated by *United States v. Davis*, 139 S. Ct. 2319 (2019), which foreclosed the use of this "conduct-specific" approach, *id.* at 2327–29; *see also United States v. Watkins*, 940 F.3d 152, 162–63 (2d Cir. 2019) ("As a result of *Davis*, . . . it appears that courts may no longer avail themselves of this 'conduct-specific' approach [even] in cases . . . where the statute focuses only on present offense conduct, not prior conduct."). Further, our prior use of the conduct-specific approach was applied "to current-offense statutes to determine whether a predicate offense qualifies as a crime of violence under the residual clause." *Id.* at 162. The 2018 career offender Guideline does not contain such a residual clause, and so the application of a conduct-specific approach to § 4B1.2's definition (by elements and by enumerated offenses) is not permissible in any case. *See, e.g., United States v. Moore*, 916 F.3d 231, 237–39 (2d Cir. 2019) (applying the categorical approach to determine whether federal bank robbery "by force and violence, or by intimidation" under 18 U.S.C. § 2113(a) is a crime of violence under § 4B1.2's enumerated clause).

offense of conviction is a "crime of violence" or a "controlled substance offense"; and (3) he has at least two prior convictions of a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1. For purposes of the 2018 career offender Guideline, a "crime of violence" is defined as any federal or state offense, punishable by imprisonment for a term exceeding one year, that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). Paragraph 1 is commonly called the "elements clause," and paragraph 2 is commonly called the "enumerated offenses clause." *See Nunez v. United States*, 954 F.3d 465, 468 (2d Cir. 2020).

15

We begin the analysis by applying the categorical approach to determine whether Hobbs Act robbery qualifies as a predicate "crime of violence" as that term is defined in U.S.S.G. § 4B1.2. *See United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). This analytical framework requires us to look "not to the facts of the particular . . . case," but to the statutory definition of the crime of conviction. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (internal quotation marks omitted). But if "the least culpable conduct that is punishable under [the Hobbs Act]," *Matthews v. Barr*, 927 F.3d 606, 617 (2d Cir. 2019), would not be a crime of violence under the Guidelines, then any "conviction under that law cannot count as a[ ] [crime of violence] predicate," *Descamps v. United States*, 570 U.S. 254, 261 (2013). Under the categorical approach, "a prior crime [will] qualify as a predicate offense in all cases or in none." *Id.* at 268.

## 1. Elements Clause

Turning first to the "elements" clause, a plain reading of § 4B1.2(a) demonstrates that the definition of "crime of violence" in that section covers the use of force or threats of force only against people. Specifically, that section defines a crime of violence as an offense that "has as an element the use, attempted use, or threatened use of physical force *against the person* of another." U.S.S.G. § 4B1.2(a)(1) (emphasis added.). By contrast, Hobbs Act robbery is defined more broadly to include crimes that can be based on threats against either people or property:

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person *or property, or property in his custody or possession, or* the person *or property* of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1) (emphasis added). Because the elements of Hobbs Act robbery sweep more broadly than the "elements clause,"

17

that offense is not a "crime of violence" under § 4B1.2(a)(1). *See Scott*,

14 F.4th at 195.[6]

The Government contests this reading of the Hobbs Act,

arguing that robbery cannot be committed through the use or threat

of force against property alone because there is no "realistic

probability" that the statute would be invoked in any case that lacked

the use or threat of force against a person. We disagree. The plain

text of the Hobbs Act robbery definition makes clear that it will apply

to force or threats against property, even in the absence of "proximity

between the person from whom the taking occurs and the threat to

property." *Eason*, 953 F.3d at 1190–91; *see also Green*, 996 F.3d at 180

(same). Where the plain statutory language is so abundantly clear,

Chappelle need not identify an actual Hobbs Act robbery prosecution

involving only a threat of force against property to establish the

---

[6] *Accord Prigan*, 8 F.4th at 1120; *Green*, 996 F.3d at 180; *Bridges*, 991 F.3d at 801; *Eason*, 953 F.3d at 1193; *Camp*, 903 F.3d at 600; *O'Connor*, 874 F.3d at 1158.

requisite "realistic probability." *See Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018) ("There is no . . . requirement . . . [to identify a specific case] when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that" the Government would apply the Hobbs Act robbery statute to conduct beyond the generic definition of robbery (internal quotation marks omitted)); *see also O'Connor*, 874 F.3d at 1154; *Eason*, 953 F.3d at 1191.

## 2. Enumerated Offenses Clause

The next question is whether Hobbs Act robbery is categorically broader than generic "robbery" and "extortion," which are two offenses listed in the "enumerated clause," under § 4B1.2(a)(2). We conclude that Hobbs Act robbery is broader than both.

In determining whether a crime categorically constitutes the enumerated offense of "robbery," we compare the elements of the

19

crime at issue (here, Hobbs Act robbery) to the "generic" definition of robbery, i.e., the "sense in which the term is now used in the criminal codes of most States." *Taylor v. United States*, 495 U.S. 575, 598 (1990). As we have previously noted, "all fifty states define robbery, essentially, as the taking of property from another person or from the immediate presence of another person by force *or* by intimidation." *United States v. Jones*, 878 F.3d 10, 18 (2d Cir. 2017) (internal quotation marks omitted).

Consequently, there are at least two ways in which Hobbs Act robbery sweeps broader than generic robbery under the categorical approach. First, as already discussed, Hobbs Act robbery includes "threatened force, or violence, or fear of injury" to property alone; generic robbery does not. Second, Hobbs Act robbery encompasses conduct involving force that is "immediate or future," while generic robbery encompasses only "immediate" danger to the victim. *Compare* 18 U.S.C. § 1951(b)(1), *with Jones*, 878 F.3d at 18; *accord Scott*,

20

14 F.4th at 196 n.2. Because Hobbs Act robbery is broader than generic robbery, it does not fall within the scope of the enumerated offense of "robbery" in § 4B1.2(a)(2). *See Scott*, 14 F.4th at 196.[7]

The Government resists this conclusion by arguing that Hobbs Act robbery's use of the term "property" must be read in light of its antecedent phrase, that is, "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future . . . ." 18 U.S.C. § 1951(b)(1). When so read, the Government contends that the "emphasis of § 1951(b)(1) on proximity to the victim means that the offense effectively requires actual or threatened force against a person, not

---

[7] *Accord Prigan*, 8 F.4th at 1120–21; *Green*, 996 F.3d at 181–82; *Bridges*, 991 F.3d at 801; *Eason*, 953 F.3d at 1193–5; *Camp*, 903 F.3d 600–02; *O'Connor*, 874 F.3d 1153–55.

21

merely property." Gov't Supp. Br. at 3. Accordingly, the Government argues that this difference in language is an "inconsequential variation from generic robbery" such that § 1951(b)(1)'s use of the term "property" is, in effect, superfluous. *Id.* The Government further points out that the "robbery" Guideline—§ 2B3.1—expressly includes Hobbs Act robbery. The Government argues that it would therefore be incongruous to interpret "robbery" as including Hobbs Act robbery in § 2B3.1, but as not encompassing it in § 4B1.2.

These arguments fail for three reasons. First, adopting the Government's view that the difference in language between the Hobbs Act and generic robbery is insignificant would require that we ascribe no meaning at all to § 1951(b)(1)'s inclusion of the language as to property, and the consequent differences between Hobbs Act robbery (which includes certain actions against property alone) and generic robbery (which is limited to offenses against persons). Second, the Government's arguments do not address the temporal

22

distinction between Hobbs Act robbery and generic robbery discussed above, which independently requires the conclusion that Hobbs Act robbery is not a crime of violence under the career offender Guideline. Third, as for the Government's observation that the "Robbery" Guideline of § 2B3.1 covers a wide array of robberies including Hobbs Act robbery, it does so by means of specific statutory cross-references, *see* U.S.S.G. § 2B3.1 Commentary, the career offender Guideline does not adopt the same cross-references, and we have elsewhere held that "robbery" as used in § 4B1.2 is to be read as a generic robbery offense, *see United States v. Jones*, 878 F.3d 10, 18 (2d Cir. 2017).

The same logic applies to the enumerated offense of "extortion." Unlike the term "robbery," the term "extortion" is specifically defined for purposes of the career offender Guideline. Application Note 1 to § 4B1.2 defines "extortion" to mean "obtaining something of value from another by the wrongful use of (A) force,

23

(B) fear of physical injury, or (C) threat of physical injury." We agree

with the Third Circuit's reasoning that:

> The most natural reading of "physical injury" is as a
> single term that excludes harm to property. That is
> because "physical" operates as an adjective, modifying
> the word "injury," and together they connote "bodily
> injury," meaning "physical damage to a person's body."

*Scott*, 14 F.4th at 197 (alteration omitted) (quoting Black's Law

Dictionary (11th ed. 2019)); *see also United States v. Edling*, 895 F.3d

1153, 1157 (9th Cir. 2018) ("[T]he Guidelines' new definition of

extortion narrows the offense by requiring that the wrongful use of

force, fear, or threats be directed against the person of another, not

property."). Further, we agree with the *Scott* court that "any doubt"

about this conclusion is resolved by looking to the definitions of

"physical injury" throughout the Guidelines, which uniformly refer

to "injury" as pertaining to harm to people, not to things. 14 F.4th at

197 (citing U.S.S.G. § 5K2.2 (defining "physical injury")); *id.* at 197 n.5

(collecting similar definitions in the Guidelines). By contrast, the

24

Guidelines refer to harm to property using the terms "damage," "loss," or "destruction." *See* U.S.S.G. § 5K2.5 (referring to "property damage or loss"); *id.* § 2C1.1(c)(3) (referring to "property destruction"). Accordingly, we conclude that Hobbs Act robbery does not constitute generic "extortion" as that offense is listed in the enumerated offenses clause of U.S.S.G. § 4B1.2(a)(2).[8]

The Government counters that the Guidelines' definition of extortion, which was added in 2016, "did not alter the long-standing common law understanding that extortion includes actual or threatened violence to property." Gov't Supp. Br. at 5. The Government acknowledges that the Guidelines defines extortion with respect to "physical injury," and that the Guidelines' usage of that

---

[8] *Accord Prigan*, 8 F.4th at 1121; *Green*, 996 F.3d at 182–83; *Bridges*, 991 F.3d at 802; *Eason*, 953 F.3d at 1194–95; *Camp*, 903 F.3d at 602–04; *O'Connor*, 874 F.3d at 1155–58.

term in the definition "provides some support for the suggestion that . . . [extortion] do[es] not encompass robberies achieved by threat to property." *Id.* at 6. Nevertheless, the Government maintains—notwithstanding the more natural reading of the term "physical injury" as excluding harm to property—that such a reading "would essentially merge the enumerated crimes of robbery and extortion." *Id.* at 7. But this argument fails because (1) we find no ambiguity in the Guidelines' use of the term "physical injury," for the reasons we already discussed, and (2) our reading does not subsume the definition of extortion into that of robbery. The two offenses as defined under the Guidelines remain distinct for at least one of the same reasons that Hobbs Act robbery and generic robbery are distinct, that is, that generic robbery encompasses only "immediate" danger to the victim whereas extortion is not so temporally (or geographically) limited. *Compare Jones*, 878 F.3d at 18, *with* U.S.S.G. § 4B1.2 cmt. n.1.

It follows from the above discussion that because Hobbs Act robbery is not a crime of violence under the career offender Guideline, a conspiracy to commit Hobbs Act robbery would not be a crime of violence by operation of Application Note 1 to § 4B1.2, which provides that a conspiracy to commit a crime of violence is itself a crime of violence. We therefore express no view on the district court's conclusion regarding the validity of Application Note 1. Even applying Application Note 1, Chappelle's conviction for conspiracy to commit Hobbs Act robbery is not a crime of violence for purposes of the 2018 version of the career offender Guideline.

## III.  CONCLUSION

This Court has previously noted that the categorical approach can produce strange results. *See, e.g.*, *United States v. Castillo*, 36 F.4th 431, 444 (2d Cir. 2022); *Chery v. Garland*, 16 F.4th 980, 990–92 (2d Cir. 2021); *United States v. Scott*, 990 F.3d 94, 125–26 (2d Cir. 2021 (Park, *J.*, concurring). Chappelle's case presents just such a situation. The object of the conspiracy here was the armed robbery of drug dealers

27

whom Chappelle and his coconspirators expected would be carrying roughly 29 kilograms of cocaine and seven kilograms of heroin. Chappelle and his coconspirators were captured on multiple recorded conversations describing in detail how they would carry out the robbery, making clear that they and the rest of the crew would be armed and prepared to kill the victims if necessary. When Chappelle and his coconspirators were arrested en route to what they believed would be the location of the robbery, agents found a total of five firearms, four of which were loaded, along with ski masks, plastic gloves, a pair of handcuffs, and plastic "zip ties" or "flex cuffs" to be used as restraints. On these facts, were a court tasked with looking at Chappelle's underlying conduct as a whole, it might well conclude that he committed a crime of violence. But that is not our task under the categorical approach. And in any event, we recognize that the district court would have had broad discretion to impose a sentence above the advisory Guidelines range, had it determined that the

28

suggested range did not fully capture the severity of the crime. The district court here, which was well versed in the facts of this case and fully aware of its sentencing discretion, made no such determination.

In sum, we hold as follows:

(1) Hobbs Act robbery is not a "crime of violence," as that term is defined in U.S.S.G. § 4B1.2(a) (2018).

(2) Chappelle's conviction for conspiracy to commit Hobbs Act robbery is therefore also not a "crime of violence" under the career offender Guideline by operation of Application Note 1 to U.S.S.G. § 4B1.2(a) (2018). Accordingly, the district court did not err by calculating Chappelle's advisory Guidelines range without reference to the career offender Guideline in U.S.S.G. § 4B1.1.

We therefore **AFFIRM** the judgment of the district court.

29