*Giron-Molina v. Garland*

# United States Court of Appeals
# for the Second Circuit

August Term 2022
Submitted: April 21, 2023
Decided: June 20, 2022
Amended: November 14, 2023

No. 22-6243

MARIA MONSERRAT GIRON-MOLINA,
*Petitioner*,

v.

MERRICK B. GARLAND,
United States Attorney General
*Respondent*.

On Petition for Review of an Order of
the Board of Immigration Appeals

Before: WALKER, PARKER, and BIANCO, *Circuit Judges*.

Petitioner Maria Monserrat Giron-Molina seeks review of a decision of the Board of Immigration Appeals ("BIA") dismissing her appeal, ordering her removed, and denying her application for cancellation of removal. The BIA ordered that she be removed under 8 U.S.C. § 1227(a)(2)(A)(i)(I) for having been convicted of a crime

involving moral turpitude ("CIMT"). *See* 8 U.S.C. § 1252(a)(2)(C)–(D). Specifically, the BIA and Immigration Judge ("IJ") determined that a conviction under Arkansas Code Annotated ("ACA") § 5-60-101 is categorically a CIMT.

We **GRANT** the Petition**, VACATE** the BIA's order of removal, and **REMAND** for further proceedings consistent with this opinion**.** We conclude that a conviction under ACA § 5-60-101 is not categorically a CIMT because the statute criminalizes conduct that is not "inherently base, vile, or depraved." *Mota v. Barr*, 971 F.3d 96, 99 (2d Cir. 2020).

———————

Lara Nochomovitz, Chagrin Falls, OH, *for Petitioner*.

Brian Boynton, Principal Deputy Assistant Attorney General; Anthony P. Nicastro, Assistant Director; Kristen H. Blosser, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

———————

PER CURIAM:

Petitioner Maria Monserrat Giron-Molina, a native and citizen of Mexico, seeks review of an April 20, 2022, decision of the Board of Immigration Appeals ("BIA") affirming an August 30, 2021, decision of an Immigration Judge ("IJ") ordering her removed and denying her application for cancellation of removal after determining she had been convicted of a crime involving moral turpitude ("CIMT"). *In re Maria Monserrat Giron-Molina,* No. A207 175 824 (B.I.A. Apr. 20, 2022), *aff'g* No. A207 175 824 (Immig. Ct. Buffalo Aug. 30, 2021). That conviction, for abuse of a corpse in violation of Arkansas Code Annotated ("ACA") § 5-60-101, stemmed from Giron-Molina's concealing her child's body in a closet after he was murdered by Tyler Hobbs.

In her petition for review, Giron-Molina argues that the BIA and IJ erred because her conviction under ACA § 5-60-101 is not categorically a CIMT. Applying the modified categorical approach to the Arkansas statute, we agree and we therefore **GRANT** the Petition, **VACATE** the BIA's order of removal, and **REMAND** for further proceedings consistent with this opinion.

## DISCUSSION

When "the BIA adopts and affirms the IJ's decision, we review the two decisions in tandem." *Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022) (alteration marks omitted). Our jurisdiction is limited to constitutional claims and questions of law given that Giron-Molina was ordered removed under 8 U.S.C. § 1227(a)(2)(A)(i)(I) for having been convicted of a crime involving moral turpitude ("CIMT"). *See* 8 U.S.C. § 1252(a)(2)(C)–(D). We review *de novo* an agency's determination that a crime falls within the definition of a CIMT. *See Mota v. Barr*, 971 F.3d 96, 99 (2d Cir. 2020); *Gill v. INS*, 420 F.3d 82, 89

3

(2d Cir. 2005).

The dispositive issue in this case is whether a conviction under ACA § 5-60-101 is categorically a CIMT. The BIA has stated that "[t]o involve moral turpitude, a crime requires two essential elements: reprehensible conduct and a culpable mental state."[1] *Mota*, 971 F.3d at 99 (quoting *Matter of Silva-Trevino*, 26 I. & N. Dec. 826, 834 (B.I.A. 2016)). "A crime involves reprehensible conduct if that conduct is 'inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" *Id.* (quoting *Mendez v. Barr*, 960 F.3d 80, 84 (2d Cir. 2020)).

In determining whether a state conviction is for a CIMT, we employ a "categorical approach." Under that approach, we "look not to the facts of the particular prior case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition." *Williams v. Barr*, 960 F.3d 68, 72 (2d Cir. 2020) (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)). A crime qualifies as a CIMT only if "by definition, and in all instances, [it] contain[s] . . . those elements that constitute a CIMT." *Mota*, 971 F.3d at 99 (quoting *Mendez*, 960 F.3d at 84) (alterations in original). In other words, "[a] state offense makes a categorical match with a generic federal offense only if a conviction of the state offense *necessarily* involved facts equating to the generic federal offense." *Williams*, 960 F.3d at 72 (internal quotation marks omitted). In undertaking this analysis, "only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant." *Id.* at 73 (quoting *Pascual v. Holder*, 707 F.3d 403, 405 (2d Cir. 2013)). "Whether the noncitizen's

---

[1] Because we conclude that ACA § 5-60-101 does not categorically involve reprehensible conduct, we do not address whether it requires a culpable mental state.

actual conduct involved such facts" is not relevant. *Moncrieffe*, 569 U.S. at 190.

We apply a modified version of this approach if a statute is divisible. A statute is divisible if it "sets out one or more elements of the offense in the alternative" and thereby defines multiple crimes. *Descamps v. United States*, 570 U.S. 254, 257 (2013); *see United States v. Pastore*, 36 F.4th 423, 428 (2d Cir. 2022). Under this "modified categorical approach," we determine which of the alternative elements the defendant was convicted of violating and then evaluate whether those elements are categorically a CIMT. *See United States v. Morris*, 61 F.4th 311, 317 (2d Cir. 2023).

Giron-Molina's statute of conviction is divisible. It provides:

(a) A person commits abuse of a corpse if, except as authorized by law, he or she knowingly:

(1) Disinters, removes, dissects, or mutilates a corpse; *or*

(2) (A) Physically mistreats or conceals a corpse in a manner offensive to a person of reasonable sensibilities.

(B) A person who conceals a corpse in a manner offensive to a person of reasonable sensibilities that results in the corpse remaining concealed is continuing in a course of conduct under § 5-1-109(e)(1)(B).

(C) (i) As used in this section, "in a manner offensive to a person of reasonable sensibilities" means in a manner that is outside the normal

5

practices of handling or disposing of a corpse.

(ii) "In a manner offensive to a person of reasonable sensibilities" includes without limitation the dismembering, submerging, or burning of a corpse.

ACA § 5-60-101 (emphasis added).

The disjunctive "or" between § 5-60-101(a)(1) and § 5-60-101(a)(2) renders the statute divisible. *See United States v. Beardsley*, 691 F.3d 252, 264 (2d Cir. 2012); *United States v. Martinez*, 991 F.3d 347, 354 (2d Cir. 2021), *cert. denied,* 142 S. Ct. 179 (Oct. 4, 2021). To aid our analysis, the modified categorical approach permits us to "review a limited class of documents from the record of conviction" to determine which of the alternate offenses was the crime of conviction that serves as the alleged CIMT. *Morris*, 61 F.4th at 318 (quoting *Pastore*, 36 F.4th at 428); *see United States v. Moore*, 916 F.3d 231, 238 (2d Cir. 2019). Such documents include the "indictment, jury instructions, or plea agreement and colloquy." *Moore*, 916 F.3d at 238 (quoting *Mathis v. United States*, 579 U.S. 500, 506 (2016)).

While the statute is divisible, we need not go through the modified categorical approach exercise in this case, because Giron-Molina's indictment reflects that she was indicted under the statute as a whole rather than under one of its two subsections. The indictment charges: "Count 1: On or about October 15, 2017, in Washington County, Arkansas, the said defendant knowingly disinters, removes, dissects, or mutilates a corpse, or physically mistreats or conceals a corpse in a manner offense to a person of reasonable sensibilities, in violation of ACA § 5-60-101." Admin. Rec. at 355. Because we cannot determine from the indictment which

6

subsection of the statute Giron-Molina was charged with violating, we must decide whether all the conduct specified in the statute to be an abuse of a corpse constitutes a CIMT. *Williams*, 960 F.3d at 73.

When we apply the categorical approach, we must assume that the conviction "rested upon nothing more than the least of the acts criminalized" by the state statute, and then determine whether those acts are encompassed by the federal standard, in this case the federal definition of a CIMT. *Moncrieffe*, 569 U.S. at 190–91 (alteration marks and internal quotation marks omitted). If the state statute criminalizes behavior that does not meet the federal definition of a CIMT, our inquiry ends because a conviction under the state statute is not categorically a CIMT. *See Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018). Here, the language of ACA § 5-60-101(a)(1) allows someone to be convicted if he or she knowingly "removes" or "disinters" a corpse, no matter the reason and without regard to whether it is done in a manner offensive to a person of reasonable sensibilities. That broad language makes it clear to us that one can be convicted under the statute for conduct that is not "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Mota*, 971 F.3d at 99.

We can easily think of scenarios under which a coffin could be "removed" or "disinterred" that do not involve "vile," "base," or "depraved" conduct. For example, a family violates ACA § 5-60-101 if it disinters a loved-one's body from a cemetery and reburies it in a family plot without completing the paperwork required by state law. *See* ACA § 20-18-604(e) ("Authorization for disinterment and reinterment shall be required prior to disinterment of a dead body . . ."). To take another hypothetical, it is not uncommon for floods and hurricanes to rip bodies from their graves or crypts. *See, e.g.*, Adam Aton, *Even the Dead Cannot Escape Climate Change*, Scientific America,

7

Oct. 31, 2019. [2] If someone went to an Arkansas cemetery as floodwaters rose and removed a coffin containing the body of a family member so that it would not be damaged or washed away, their actions would violate ACA § 5-60-101. In both cases, although the conduct would violate Arkansas law, it would not be "vile" or "base" or "depraved" conduct.[3] Thus, because ACA § 5-60-101 criminalizes conduct that is not invariably vile or depraved, a conviction under the statute cannot categorically be considered a CIMT.

The BIA did not conduct an elements-based categorical inquiry. Instead, it applied an inapposite "realistic probability" test. That test "operates as a backstop when a statute has indeterminate reach, and where minimum conduct analysis invites improbable hypotheticals." *Hylton*, 897 F.3d at 63. It applies only when there is a match between the state statute and federal standard, but a petitioner posits imaginative scenarios in which the state statute would be violated in such a way that does not meet the requirements of a CIMT. In these instances, we require petitioners to demonstrate that there is a "realistic probability" that such behavior would actually be prosecuted. *Id.*; *see also Moncrieffe*, 569 U.S. at 206 ("To defeat the categorical comparison in this manner, a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms.").

---

[2] Available at https://www.scientificamerican.com/article/even-the-dead-cannot-escape-climate-change/.

[3] Although theses hypothetical scenarios are not what occurred in this case, Giron-Molina's actual conduct is irrelevant. The Supreme Court has made clear that the categorical approach "precludes . . . an inquiry into how any particular defendant may commit the crime." *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022).

Giron-Molina argued to the BIA that there are several scenarios in which one could violate the statute without engaging in reprehensible conduct. The BIA rejected this argument and concluded that she had not provided any evidence reflecting a "realistic probability" of Arkansas convicting someone under ACA § 5-60-101 based on her hypotheticals. Special App'x at 5. This approach was an incorrect application of the realistic probability test.

We have been clear that the realistic probability test is not applicable when, as here, "the statutory language itself . . . creates the realistic probability that a state would apply the statute to conduct beyond" the federal standard. *Hylton*, 897 F.3d at 63 (quoting *Ramos v. U.S. Att'y Gen.*, 709 F.3d 1066, 1072 (11th Cir. 2013)); *see also United States v. Chappelle*, 41 F.4th 102, 109 (2d Cir. 2022) (holding that because "the plain statutory language is so abundantly clear" that Hobbs Act robbery can be committed through the use or threat of force against property, the defendant "need not identify an actual Hobbs Act robbery prosecution involving only a threat of force against property").

For these reasons, we hold that a conviction under ACA § 5-60-101 does not categorically constitute conviction of a CIMT.

## CONCLUSION

We **GRANT** the Petition**, VACATE** the BIA's order of removal, and **REMAND** for further proceedings consistent with this opinion.